IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **BECKY S. WAKEHOUSE,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV422 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **THE GOODYEAR TIRE & RUBBER CO.,** | ) | |
| **CATERPILLAR, INC.,** | ) | |
| **TITAN INTERNATIONAL, INC.,** | ) | |
| **TITAN WHEEL CORPORATION** | ) | |
| **OF VIRGINIA,** | ) | |
| **TITAN WHEEL CORPORATION a/k/a** | ) | |
| **TITAN MARKETING SERVICES, INC.,** | ) | |
| **and TITAN WHEEL CORPORATION** | ) | |
| **OF ILLINOIS,** | ) | |
| | ) | |
| Defendants. | ) | |

    This matter is before the court on the plaintiff's motions to compel discovery (Filing Nos. 175, 178 and 181). The plaintiff filed separate briefs (Filing Nos. 176, 179 and 182) and indexes of evidence (Filing Nos. 177, 180 and 183) for each motion. The plaintiff's motions each seek supplemental responses to requests for production related to three identical discovery requests sent to each of the defendants.

    The defendant Caterpillar, Inc. (Caterpillar) filed a brief (Filing No. 191) and an index of evidence (Filing No. 192) opposing the plaintiff's motion (Filing No. 181). The defendants Titan Marketing Services, Inc., Titan International, Inc., Titan Wheel Corporation of Virginia and Titan Wheel Corporation of Illinois (collectively the Titan defendants) filed a brief (Filing No. 204) and an index of evidence (Filing No. 205) in opposition to the plaintiff's motion (Filing No. 178). The defendant The Goodyear Tire & Rubber Co. (Goodyear) filed a brief (Filing No. 206) and an index of evidence (Filing No. 207) opposing the plaintiff's motion (Filing No. 175). Finally, the plaintiff filed separate briefs (Filing Nos. 208, 211 and 213) and a single index of evidence (Filing No. 212) in reply. For the reasons stated below, the court finds the plaintiff's motions to compel should be denied.

**BACKGROUND**

The plaintiff alleges the defendants are liable for the untimely death of her husband under theories of strict liability and/or negligence. **See** Filing No. 1, Exhibit A. Gary Wakehouse was killed on February 6, 1997, while he was changing a tire on a Caterpillar road grader. **See** *id.* ¶ 15, 24. While the tire was being installed and mounted, the multi-piece wheel rim separated causing the side-ring to strike Mr. Wakehouse resulting in fatal injuries. *Id.* Relevant to the instant motions, the Titan defendants state this case involved "one particular size 3 piece wheel assembly for a specific application. The assembly consists of a rim base, side flange, and a lock ring for a 24" x 10" wheel mounted on a Caterpillar road grader." **See** Filing No. 204, p. 1. Certain of the Titan defendants

> produce multi-piece wheel components in 3 piece and 5 piece configurations for various types of earthmoving, mining, military and construction equipment, including skid steers, aerial lifts, cranes, graders and levelers, scrapers, self-propelled shovel loaders, load transporters, haul trucks, and backhoe loaders, among others. [These defendants] manufacture in excess of 100 multi-piece wheel applications for use in the construction/earthmoving industry. These applications include over 60 different sizes of multi-piece rims ranging from 20" diameter rims to 63" diameter rims, ranging in width from 8" to 60", and ranging in weight from 125 pounds to 7,000 pounds. These multi-piece wheel applications are used on equipment ranging from the smallest wheel loaders on up to giant 400 ton rigid frame rear dump trucks.

*Id.* p. 1-2 (internal citations omitted).

On August 15, 1997, the plaintiff filed the action in the Circuit Court of St. Clair County, Illinois. After some legal proceedings in Illinois, on August 2, 2005, the plaintiff filed her complaint against the defendants in the District Court of Douglas County, Nebraska. **See** Filing No. 1, Exhibit A. On August 31, 2005, the action was removed to the United States District Court for the District of Nebraska. **See** Filing No. 1.

On March 2, 2006, the plaintiff served each of the defendants with the plaintiff's First Request for Production. **See** Filing No. 54 (Certificate of Service). The plaintiff seeks the following production from each of the defendants:

Request for Production No. 2

> Any and all documents or other items of a tangible nature, including information contained in computer files, in any manner recording, containing, memorializing, referencing or otherwise relating to any notice received by this Defendant, at any time and from any source, of any alleged injury or other claim in any manner involving or otherwise pertaining to a multi-piece wheel rim, or injuries or damages allegedly resulting therefrom.

Request for Production No. 3

> Any and all documents . . . relating to any investigation, study, evaluation, testing, or other form of inquiry conducted by or on behalf of this Defendant in any manner relating to the relative safety or danger, or potential risk of harm, associated with multi-piece wheel rim design, manufacture, distribution or use.

Request for Production No. 4

> Any and all documents . . . relating to any investigation, study, evaluation, testing, or other form of inquiry – not otherwise referenced in request #3, above – in any manner relating to the relative safety or danger, or potential risk of harm, associated with multi-piece wheel rim design, manufacture, distribution or use.

**See** Filing Nos. 177, 180 and 183 Exhibit A.

The plaintiff argues the discovery requested is clearly relevant to whether each defendant had notice of a potential danger due to a defect, ability to correct the defect, magnitude of the problem or causation. The plaintiff contends there is no compelling reason to limit the requests in time or to a type of product because the design defects involved in this matter is common to many multi-piece rims over time. Specifically, the plaintiff seeks evidence the defendants knew, through notice of claims or testing, that an inherent risk of multi-piece rims was a danger the components may separate during inflation, projecting the components away from the machinery. The plaintiff denies it seeks either information about the resolution of any claims or privileged materials.

Goodyear served a response on April 7, 2007 (Filing No. 177, Exhibit A), Caterpillar served a response on April 3, 2006 (Filing No. 183, Exhibit A), and the Titan Defendants response is undated, but the record indicates it was served June 29, 2006 (Filing No. 180,

Exhibit A and D).  Each of the defendants objected to production of the requested discovery.

The plaintiff wrote to counsel for Goodyear and Caterpillar on May 30, 2006, in an attempt to obtain supplemental responses.  **See** Filing Nos. 177 and 183 Exhibit B.  Caterpillar responded by letter on June 6, 2006.  **See** Filing No. 192, Exhibit A.  Goodyear responded by letter on July 6, 2006.  **See** Filing No. 207, Exhibit A.  The plaintiff wrote to counsel for the Titan defendants on January 11, 2007.  **See** Filing No. 180, Exhibit B.  The plaintiff then made attempts in late January 2007, to confer with counsel for Caterpillar and Goodyear.  **See** Filing Nos. 177 and 183, Exhibit D.  Each of the defendants' counsel indicated their position would remain unchanged or did not respond before the plaintiff's January 30, 2007 motions to compel were filed.  **See** Filing Nos. 180 and 183, Exhibit D.

The defendants' contend the plaintiff's motions to compel should be denied because they were untimely filed, counsel did not comply with NECivR 7.1(i) and based on the merits.  First, the defendants' argue the motions are untimely, or the arguments abandoned, because the plaintiff did not pursue the issue after the initial May 30 letter until after the close of discovery.  Further Goodyear and Caterpillar assumed the issue had been resolved after their responses in June and July of 2006.  Due to the lateness of the motions, not only has discovery closed, but also the deadlines related to expert disclosures and related depositions.  Caterpillar contends these deadlines may need to be re-opened if the motions to compel are granted.  Second, Goodyear argues the plaintiff's counsel did not make personal or good faith attempts to resolve the discovery issue prior to filing the motions to compel.

Third, the defendants assert the plaintiff's motions to compel should be denied because the defendants properly responded and/or objected.  In summary, the defendants contend the requests are not reasonably calculated to lead to the discovery of admissible evidence because they are not reasonably limited in scope by time, a particular type or size of multi-piece rims, or relevant application.  The defendants also objected to the requests on the basis of ambiguity, vagueness and undue burden.

Further, in response to Request for Production No. 2, Goodyear stated,

> the multi-piece rim allegedly involved in the accident at issue was designed, manufactured, and sold by Titan or other "Titan Defendants." The only product of Goodyear's allegedly involved in the accident giving rise to this litigation is a 14.00-24 TG 12-ply grader tire manufactured at Goodyear's Topeka, Kansas plant in 1995. Goodyear also objects to this request as vague and ambiguous in that the term "notice" in undefined.
> . . . to its present knowledge, except for the accident giving rise to the present litigation, it has not been given "notice" of an alleged injury claim, or damages allegedly resulting from a Titan multi-piece rim.

**See** Filing No. 177, Exhibit A. Goodyear gave the same response to Request for Production Nos. 3 and 4, omitting the final sentence. *Id.*

Similarly, Caterpillar responded to Request for Prosecution No. 2, in spite of overbreadth and relevance objections, by stating:

> Caterpillar will attempt to answer this request with respect to wheels of similar design from any of the Titan defendants.
> Caterpillar further specifically objects with respect to that part of the request that seeks information as to the resolution of any litigation that might be identified. Such a request seeks information that is neither relevant nor calculated to lead to relevant information. Further, if there was such litigation that was settled, not only would that information be neither relevant nor calculated to lead to relevant information, but also it would be subject to a confidentiality agreement prohibiting dissemination of information.
> Caterpillar further objects for the reason that the information sought here is neither relevant nor calculated to lead to relevant information. As an example, assume that Caterpillar received notice of an alleged injury or claim pertaining to separation of a multi-piece wheel, that no litigation was ever filed and that it was determined that the injured party did not pursue litigation or further pursue a claim because investigation determined that plaintiff had improperly performed some task that directly caused the separation. Under the language of this request, Caterpillar would be obligated to search through its files for every such notice of an alleged injury and yet such information would be neither relevant nor calculated to lead to relevant information and would therefore constitute an expensive and burdensome search on

5

> Caterpillar's part with no possible assistance to plaintiff to come of it.
> Subject to the forgoing objections and without waiving them Caterpillar states: Caterpillar will provide an incident report dated 6/14/2000, subject to an appropriate protective order.

**See** Filing No. 183, Exhibit A. Caterpillar states it proposed a protected order related to the June 14, 2000 report, but has never heard any response. **See** Filing No. 191, p. 4-5. In response to Request for Production Nos. 3 and 4 Caterpillar on grounds of relevance, privilege, and to the extent the request sought expert witness materials, then agreed to "respond with respect to any items involving wheels of similar design from Titan. Caterpillar states it has been unable to find responsive documents." **See** Filing No. 183, Exhibit A. Caterpillar reiterates in its brief that "it has no documents of the type sought with respect to multi-piece wheels from Titan." **See** Filing No. 191, p. 5-6.

Over objections, the Titan defendants responded to Request for Production No. 2 by stating, "other than the instant action, none of the Titan Defendants have received notice of any injury regarding multi-piece rims from a 140H motor grader, or any 24 x 10 three-piece wheel assemblies." **See** Filing No. 180, Exhibit A. Similarly over objections, the Titan defendants responded to Request for Production No. 3 by stating, "see the applicable OSHA regulations for servicing multi-piece wheels, and the wheel catalog documents produced by the Titan Defendants." *Id.* In response to Request for Production No. 4, the Titan defendants duplicated its response to Request for Production No. 3, then added, "and the standards promulgated by the Tire & Rim Association." *Id.*

More generally, the defendants argue the plaintiff fails to justify reasons for seeking documents related to "all types of multi-piece rims." The defendants contend there is no explanation about how multi-piece rims made by other manufacturers, of other types, of other sizes and used in other applications would be relevant in this case. The defendants argue the requests should be limited in time and to those products which are substantially similar to the rims allegedly involved in the subject accident, substantially similar failure modes, substantially similar factual circumstances (i.e., explosive separation of a multi-piece wheel during mounting of a tire) and similar injury (i.e., physical injury).

6

The plaintiff denies the motions to compel were untimely filed. The plaintiff points out there was no court-imposed deadline for filing motions to compel. Additionally, the plaintiff notes the trial in this matter was recently continued from March 2007, until October 2007. The plaintiff argues counsel made sincere attempts to resolve the discovery disputes prior to filing the motions as evidenced by the May 30, 2006 letter, and January 26 and 29 telephone messages/correspondence or in person.

## DISCUSSION

### A.     Timeliness

Two of the defendants responded with objections to the disputed discovery in April 2007. The plaintiff wrote to these defendants on May 30, 2006, and received responses in June and July indicating no changes in the defendants' willingness to produce the requested documents. The plaintiff did not contact these defendants about the discovery issues again until late January 2007. The Titan defendants responded to the discovery requests on June 29, 2006, with objections. However, the plaintiff did not contact counsel for the Titan defendants about the discovery until January 11, 2007.

Additionally, the plaintiff filed the motions to compel on January 30, 2007, which was two weeks after the close of discovery and less than two months before the scheduled trial. **See** Filing No. 60. The trial date has since been extended to allow the court sufficient time to resolved the pending motions for summary judgment. The motions for summary judgment were filed in September and November of 2006. **See** Filing Nos. 86, 94 and 121. The plaintiff filed responses to both motions for summary judgment filed in September. **See** Filing Nos. 101 and 107. The relevant defendants then filed briefs in reply. **See** Filing Nos. 110 and 112. Goodyear sought and received an extension of time until November 13, 2006, to file a motion for summary judgment to allow time to depose the plaintiff's expert witnesses. **See** Filing No. 106. Goodyear filed the motion for summary judgment on November 13, 2007. On December 1, 2006, the plaintiff filed a motion to compel and a motion for an extension of sixty days to respond to Goodyear's motion for summary judgment for the stated reason to depose the defendants' expert witnesses and obtain discovery from the Titan defendants (unrelated to the instant motions). **See** Filing Nos. 140

and 143. The court granted the plaintiff's extension until February 5, 2007. **See** Filing No. 148. The plaintiff sought another extension of the deadline to respond to Goodyear's motion for summary judgment based on the information sought in the December motion to compel and a continuance of the trial date. **See** Filing No. 189. On the same date, the motion to compel directed at the Titan defendants was denied. **See** Filing No. 186. By that time the plaintiff had filed the three instant motions to compel and the court granted the plaintiff an additional extension of time to respond to the motion for summary judgment until April 9, 2007. **See** Filing No. 194. There is no evidence or argument the instant motions to compel are related to the pending motions for summary judgment.

"Rule 37 of the Federal Rules of Civil Procedure does not provide a deadline for the filing of a motion to compel; nor did any order of the undersigned, or of the trial court, provide a date by which any motion to compel was to have been filed." ***U.S. ex rel. Purcell v. MWI Corp.***, 232 F.R.D. 14, 17 (D. D.C. 2005). Where there is no deadline for filing motions to compel, the court will consider factors such as whether "the deadline for the close of discovery had passed when the motion to compel was filed, . . . [and whether] any order requiring further discovery would [ ] disturb[ ] either the consideration of a dispositive motion or the conduct of the trial." ***Id.*** (citing cases).

> Once, as here, a party registers a timely objection to requested production, the initiative rests with the party seeking production to move for an order compelling it. Failure to pursue a discovery remedy in timely fashion may constitute a waiver of discovery violations. It is especially important that a party file its motion before discovery cutoff. It is also critical that the movant not wait to file its motion until the eve of trial.

***Continental Indus., Inc. v. Integrated Logistics Solutions***, LLC., 211 F.R.D. 442, 444 (N.D. Okla. 2002) (plaintiff waited 18 months after discovery responses and until two weeks before trial to move to compel) (internal citations omitted); **see also *Miller v. Baker Implement Co.***, 439 F.3d 407, 414 (8th Cir. 2006) (noting the plaintiff failed to avail himself of discovery remedies for nearly six months and until after the discovery has closed and summary judgment was granted).

Here, the plaintiff gives no explanation for the lateness of the motions to compel. The plaintiff indicates that the parties are not prejudiced because of the recently continued

trial date. However, given the nature of the discovery sought, if the motions were granted, the defendants could reasonably seek to re-open other deadlines creating further delays of the case. Although the plaintiff does not need the requested information to respond to the pending summary judgment motions, the plaintiff failed to avail herself of discovery remedies in a timely fashion. This is evident particularly where the plaintiff sought extensions of other deadlines due to discovery related disputes and filed an unrelated motion to compel. **See *American Motorists Ins. Co. v. General Host Corp.***, 162 F.R.D. 646, 647-48 (D. Kan. 1995) (motion to compel denied where defendant made "absolutely no effort" to file motion before discovery deadline). Under the circumstances, the court finds the plaintiff waived the alleged discovery abuses and the motions to compel are untimely. In any event, the plaintiff's motion should also be denied on the merits, as discussed below.

### B.   Sincere Attempts to Confer

Both the federal rules and the local rules require counsel to confer prior to filing discovery related motions. In particular, NECivR 7.1(i) states:

> To curtail undue delay in the administration of justice, this court will not consider any discovery motion unless counsel for the moving party, as part of the motion, shows in writing that after **personal consultation** with counsel for opposing parties and **sincere attempts** to resolve differences, they are unable to reach an accord. This showing shall also recite the **date, time and place of such conference** and the **names of all persons** participating in them.

**See** NECivR 7.1(i) (emphasis added); **see also** NECivR 7.1(i)(1) (defining personal consultation).

It appears the plaintiff did make some attempts to resolve the discovery dispute prior to filing the motions to compel. Counsel were able to air their positions prior to the filing of the motion. While six months passed between the written consultation and the filing of the motions for two of the defendants and it is unclear whether additional consultation could have helped the parties resolve the pending issues, the court finds the plaintiff's attempts at consultation to be sufficient for consideration of the current dispute.

**C.    Requests for Production**

Federal Rule of Civil Procedure 34 allows a party to request of another party production of documents for inspection and copying. Fed. R. Civ. P. 34(a). Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. **See** Fed. R. Civ. P. 26(b)(1). Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978). Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. **See *Burlington Ins. Co. v. Okie Dokie, Inc.***, 368 F. Supp. 2d 83, 86 (D. D.C. 2005). "All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." ***Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted). Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery. **See *Rubin v. Islamic Republic of Iran***, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). However, the proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required. ***Hofer v. Mack Trucks, Inc.***, 981 F.2d 377, 380 (8th Cir. 1993). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. **See *Cervantes v. Time, Inc.***, 464 F.2d 986, 994 (8th Cir. 1972). The court may issue a protective order to prevent discovery where "justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). The District Court "enjoys considerable discretion over

discovery matters" and may limit the scope of discovery, if it has a good reason to do so. **Burlington Ins.**, 368 F. Supp. 2d at 86.

The plaintiff relies on the deposition testimony of one of her experts to show the relevance of Request for Production No. 2, which is not limited in scope or time. Specifically, the plaintiff states that "Professor O.J. Hahn, testified that the design defects in the rim that injured the decedent in this case are present on many rims; in fact, it was easier for him to identify and list the few rims that did not incorporate this design defect than it was to identify and list the many rims that do incorporate it." **See, e.g.,** Filing No. 179, p. 3 (**citing** Transcript of the Deposition of O.J. Hahn 100:18-21, 108:4-20, attached as Ex. C to Filing No. 180). In response, Goodyear contends Professor Hahn's testimony is equivocal about defects and no expert has identified any particular design defects. **See** Filing No. 206, p. 6. Specifically, Professor Hahn testified he has "problems with quite a few multi-piece rims ever since the single-piece rims were developed" and "there is one multi-piece wheel which I know doesn't have any design defects." **See** Filing No. 180, Exhibit C p. 108; **see also** p. 100 (stating "the engineer . . . should have been fully aware of the problems of that design – of any multi-piece design of this system."). Accordingly, the defendants argue the plaintiff fails to show the relevance of the admittedly broad request for production.

Further, the plaintiff relies on the reasoning in **Lovett ex rel. Lovett v. Union Pac. R. Co.**, 201 F.3d 1074 (8th Cir. 2000), to argue the reasonableness and relevance of the information requested to the defendants' notice of defects. The defendants contend Lovett supports their position because the plaintiff has failed to show the information requested would be substantially similar to the plaintiff's factual situation.

In **Lovett**, the court excluded evidence at trial of vehicle incidents which were not "substantially similar" to the vehicle/locomotive collision at issue. **Lovett**, 201 F.3d at 1080-81. The court noted that "[e]vidence of similar incidents may be relevant to prove the defendant's notice of defects, the defendant's ability to correct known defects, the magnitude of the danger, the product's lack of safety for intended uses, or causation." **Id.** at 1081. However, in **Lovett**, the incidents were not similar due to differences in the type of vehicle, type of accident, speed, and topographical area, etc. **Id.** at 1080. Under those

11

circumstances, admitting the evidence at trial would confuse the issues and be more prejudicial than probative. *Id.* at 1081.

The standards used by the *Lovett* court to exclude evidence from trial are different from those used for discovery. However, the *Lovett* case helps to define the parameters of relevant information. Under the circumstances of this case, the plaintiff has failed to meet her threshold burden of showing the requests, without limit in time or scope, would lead to the discovery of admissible evidence. The defendants have presented evidence of the diversity of products (by size, weight and use) which correspond with the plaintiff's requests. While it may be possible that additional production beyond the defendants' responses would provide information reasonably calculated to lead to the discovery of admissible evidence, the plaintiff has proposed no reasonable boundary on the requests. Therefore, the court will not required the defendants to supplement their responses to Request for Production Nos. 2, 3 and 4.

**D.     Sanctions**

With regard to motions to compel discovery responses, Federal Rule of Civil Procedure 37(a)(4)(B) provides:

> If the motion is denied, the court may enter any protective order authorized under Rule 26(c) and shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A). Upon reviewing the circumstances of this case, the court finds the substance of the motion to compel and the objections were substantially justified.[1] Accordingly, the court finds sanctions should not be imposed in this matter. The parties

---

[1] The provisions of Rule 37(a)(4) provide that sanctions may not be appropriate where a motion was substantially justified. "Making a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule." Charles A. Wright, et al., *Federal Practice and Procedure* § 2288 (2d ed. 1994).

asserted legitimate reasons for several of the arguments, though not all were found to be supportable.  Thus, the court finds the plaintiff has shown substantial justification for her position as to the discovery addressed herein.  **See** Fed. R. Civ. P. 37(a)(4)(C).  The court does not find the imposition of sanctions to be warranted in this case and will not assess sanctions against any party with regard to the instant discovery dispute.  Upon consideration,

**IT IS ORDERED:**

1. The plaintiff's motions to compel discovery (Filing Nos. 175, 178 and 181) are denied.

2. The parties shall confer regarding a protective order regarding Caterpillar's production of the June 14, 2000 report such that the whole report or, in the absence of a protective order, a redacted version of the report may be **produced by April 19, 2007**, if the document is desired by the plaintiff.

DATED this 5th day of April, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge